```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA

   B and S EQUIPMENT CO.                    CIVIL ACTION

   VERSUS                                   NO:10-1105

   HEALTHEON INC.                           SECTION: "J" (2)
```

### ORDER AND REASONS

Before the Court is Hanover Insurance Company ("Hanover")'s Motion to Dismiss Counterclaims of Defendants Caillou Island Towing, Inc., ("Caillou Island"), Industrial Labor and Equipment Services, L.L.C. ("ILES"), and REC Marine Logistics, L.L.C. ("REC Marine") (Rec. Doc. 67). Caillou and ILES filed a response (Rec. Doc. 74). REC Marine also filed a response (Rec. Doc. 79). Hanover submitted a reply (Rec. Doc. 86).

**FACTUAL AND PROCEDURAL BACKGROUND:**

U.S. Army Corps of Engineers entered into a contract with Healtheon, Inc. ("Healtheon") to repair a jetty at the Port Fourchon Recovery Project located in Lafouche Parish, Louisiana ("Project"). The contracted amount was $2,974,098.00. Hanover issued a payment bond on behalf of Healtheon, as principal, in connection with Healtheon's contract with the Corps of Engineers ("Bond"). In October of 2009, Healtheon subcontracted with B and S Equipment Co., Inc. ("B&S") to perform work at the Project. A dispute arose between Healtheon and B&S as to the performance of

1

the B&S subcontract, and B&S was terminated in December of 2009. Healtheon then subcontracted with B&B Fire and Safety Services, Inc. ("B&B Fire") to perform jetty stone replacement at the Project. B&B Fire contracted with ILES and REC Marine to perform portions of its scope of work. ILES in turn contracted with several other subcontractors, including Caillou Island.

B&S filed suit against Healtheon and Hanover in this Court, Case No. 10-1105, seeking payment for allegedly unpaid work performed at the Project ("Main Cause") (Rec. Doc. 1). The Main Cause was subsequently stayed pending arbitration between Healtheon and B&S (Rec. Doc. 22). In October of 2010, Healtheon brought suit, Case No. 10-4137, against several of the Project subcontractors, including B&S, B&B Fire, Caillou Island, ILES, and REC Marine, alleging damages for delay, unabsorbed overhead, lost production, and other damages ("Healtheon Lawsuit"). Hanover was not named as a defendant in the Healtheon Lawsuit.

Caillou Island, ILES, and REC Marine also filed separately numbered suits against Healtheon and Hanover ("Subcontractor Suits"). The Main Cause, Healtheon Lawsuit, and Subcontractor Suits were subsequently consolidated.

On February 24, 2011, in response to the Healtheon Lawsuit, Caillou Island filed a responsive pleading in which it asserted a counterclaim against both Healtheon and Hanover (Rec. Doc. 58). Caillou Island's counterclaim alleged that both companies were

2

unjustly enriched by the work Caillou Island performed at the Project pursuant to its oral contract with ILES, and for which it was not paid. On the same day, and also in response to the Healtheon Lawsuit, ILES asserted a counterclaim against Healtheon and Hanover, contending that both companies were unjustly enriched for unpaid work ILES performed at the Project pursuant to its written contract with B&B Fire (Rec. Doc. 59). On March 7, 2011, REC Marine responded to the Healtheon Lawsuit with a similar counterclaim against Healtheon and Hanover, claiming that both companies were unjustly enriched by unpaid work REC Marine performed at the Project pursuant to its written contract with B&B Fire (Rec. Doc. 63). Each counterclaim of Caillou Island, ILES, and REC Marine asserted that Healtheon and Hanover were individually liable to pay remaining balances, as well as attorney's fees, interest, and costs.

**PARTIES' ARGUMENTS:**

Hanover argues that it was not served with a summons or complaint relating to the counterclaims. In essence, Caillou Island, ILES, and REC Marine filed third-party demands against Hanover that were mislabeled as counterclaims. The third-party demands were not served upon Hanover as required by the Federal Rules of Civil Procedure; therefore, they should be dismissed pursuant to Rule 12(b)(5). Caillou Island, ILES, and REC Marine's claims for unjust enrichment should also be dismissed under Rule

3

12(b)(6), as those parties cannot state a claim for unjust enrichment where, as here, potential contractual remedies exist at law, and Hanover was not enriched by the work. Furthermore, Caillou Island, as a third-tier claimant under the Bond, is not a proper party to bring a Miller Act claim against Hanover. Thus, this claim against Hanover should be dismissed under Rule 12(b)(6).

ILES and Caillou Island filed an opposition, arguing that they have since filed an amended complaint against Hanover, which renders Hanover's motion to dismiss the mislabeled crossclaims moot. REC Marine's response reiterates ILES and Caillou Island's arguments.

REC Marine's response also addresses Hanover's argument regarding the parties' unjust enrichment claims. REC Marine contends that its claims for unjust enrichment are proper because the agreement between B&B and REC Marine was never formalized and because Healtheon was unjustly enriched when it received payments from the Corps of Engineers. ILES and Caillou Island did not focus on this issue in their memorandum.

When addressing Hanover's Miller Act argument, Caillou Island points out that case law clearly establishes that a sub-subcontractor can recover against general contractors and their sureties, as long as three conditions are met: (1) notice must be given within 90 days of the sub-subcontractor's last work; (2)

4

the notice must state with substantial accuracy the amount claimed; and (3) the notice must include the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Caillou Island represents that it met all the requirements and asserts that its claim under Miller Act is proper.

Hanover's reply concedes that its motion to dismiss counterclaims under Rule 12(b)(5) is now moot. Hanover also points our that because the re-filed counterclaims do not reference Hanover, Hanover's 12(b)(6) is also moot. However, out of caution, Hanover reiterates its arguments previously mentioned in its motion.

**DISCUSSION:**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, __U.S.__, 129 S.Ct. 1937, 1949 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550

5

U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S.Ct. at 1949. "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. <u>Lormand v. U.S. Unwired, Inc</u>., 565 F.3d 228, 232-33 (5th Cir. 2009); <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 129 S.Ct. at 1949-50.

   Because the parties have since amended their complaint against Hanover, Hanover's Reply acknowledges that its Rule 12(b)(5) argument is now moot. Additionally, ILES and Caillou's amended complaints (Rec. Docs. 78 and 72, respectively) do not allege unjust enrichment claims against Hanover. Caillou Island also appears to have abandoned its Miller Act claims against Hanover. On the other hand, REC Marine's amended complaint against Hanover still contains unjust enrichment claims against Hanover (Rec. Doc. 78). Thus, Hanover's Motion to dismiss ILES and Caillou's claims is now moot.

   Having reviewed REC Marine's complaint, the Court concludes that Hanover's Motion to Dismiss REC Marine's unjust enrichment claims must be denied. Hanover argues that where a party asserts claims for a breach of contract, the same party is precluded from

6

prevailing on its unjust enrichment claims, as such claims are mutually exclusive. However, Federal Rules of Civil Procedure allow claimants to plead in the alternative. Furthermore, it appears from the face of REC Marine's complaint that its "claim to relief is plausible on its face." Iqbal, 129 S.Ct. at 1949. Hanover argues that it was not enriched by REC Marine's work. Contrary to Hanover's assertion, Hanover could be enriched by REC Marine's work, as its obligation under the bond would be affected. Drawing all reasonable inferences in favor of REC Marine, the Court concludes that REC Marine pled enough facts to withstand Hanover's Rule 12(b)(6) Motion to Dismiss.

Accordingly, **IT IS ORDERED** that Hanover's **Motion to Dismiss (Rec. Doc. 67)** is **MOOT** as to Hanover's Rule 12(b)(5) claims, as to Rule 12(b)(6) claims regarding Caillou Island's Miller Act claims, and as to Calliou Island and ILES' unjust enrichment claims. **IT IS FURTHER ORDERED** that Hanover's **Motion to Dismiss** is **DENIED** where it pertains to REC Marine's unjust enrichment claims.

New Orleans, Louisiana this 3rd day of May, 2011.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE